**IT IS ORDERED as set forth below:**

**Date: September 30, 2024**

_____

**Jeffery W. Cavender
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 23-54816-JWC |
| JOHN FITZGERALD CARTER, | CHAPTER 11 |
| Debtor. | |
| | |
| MATTHEW G. ARMSTRONG, | |
| Plaintiff, | ADVERSARY PROCEEDING NO. |
| v. | 23-5108-JWC |
| JOHN FITZGERALD CARTER, | |
| Defendant. | |

## **ORDER**

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. No. 17) (the "Motion"). Plaintiff Matthew G. Armstrong ("Plaintiff" or "Armstrong") moves

1

for summary judgment as to liability only on his claims asserted in this adversary proceeding against Debtor John Carter ("Debtor" or "Carter") for embezzlement (or larceny) under 11 U.S.C. § 523(a)(4) and willful and malicious injury under 11 U.S.C. § 523(a)(6). Armstrong asserts he is entitled to summary judgment based on the preclusive effect of a state court judgment in the Superior Court of Cobb County, Georgia, Case No. 15108145 (the "Superior Court Action").

The Court has reviewed the Motion, each of the responsive papers submitted by the parties,[1] and all supporting documents filed with them, and for the reasons set forth in detail below, the Court will deny the Motion.

### I. Jurisdiction

The Court has jurisdiction over this nondischargeability action pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### II. Findings of Fact

The facts at issue on this limited request for summary judgment are mostly uncontested. Armstrong sued Carter and an entity named MGA Holdings, Inc. ("MGA" or "MGA Holdings") in the Superior Court Action in 2015. On February 27, 2019, Armstrong filed an Amended Verified Petition for Judicial Dissolution of

---

[1] Armstrong filed a Statement of Uncontested Material Facts in Support of his Motion for Partial Summary Judgment ("Armstrong's SOF") (Doc. No. 18). Carter filed a response in opposition to summary judgment, a response to Armstrong's Statement of Uncontested Facts, and a Statement of Material Facts as to Which a Genuine Issue Exists to Be Tried (Doc. No. 22). Carter also filed a brief in support of his opposition (Doc. No. 23). Armstrong filed a Reply to Defendant's Response to Statement of Material Facts and a Response to Defendant's Statement of Material Facts as to Which a Genuine Issue Exists to Be Tried (Doc. No. 27). Armstrong also filed a Reply in Support of his Motion for Summary Judgment (Doc. No. 28).

2

Limited Liability Company and Complaint (the "Amended Complaint"), which asserted claims against Carter for, as relevant here, breach of fiduciary duty; fraud, deceit, and suppression; attorneys' fees; and punitive damages.

The Amended Complaint includes the following allegations:[2]

- Paras. 5-6: MGA was formed in 2006 and owned a single asset, 3015 RN Martin Street, East Point, Georgia 30344 (the "Property").

- Paras. 7-9: In or around January 2014, Carter Brothers Properties, LLC acquired 70% of the membership interests in MGA, then transferred the interests to Carter. During all relevant time periods, Mr. Armstrong owned 30% of the membership interests in MGA.

- Paras. 10-11 and 46: An amendment to MGA's Operating Agreement signed on July 1, 2014, made Mr. Carter its Manager. He remained its Manager and Managing Member during all relevant time periods.

- Paras. 12 and 47: "As the managing member of a limited liability company, Carter owes fiduciary duties to the company and its member investors."

- Para. 13: "On July 3, 2014, Carter caused MGA Holdings to take out a loan (the 'Loan) with the Bank of America in the amount of $1,264,000 secured by the Property."

- Para. 56: "Carter caused MGA Holdings to take out the Loan and to use the Property as collateral without informing MGA Holdings' members, including Armstrong."

- Paras. 14-15 and 49: Mr. Carter did not use the Loan proceeds for MGA's benefit; instead, the funds "were illegally distributed to Carter, Carter's acquaintances or family members, or to other Carter-owned or -controlled entities or interests."

---

[2] Although Carter disputes the substance of most of the allegations, he does not dispute that that Amended Complaint contains the allegations. The Court's list of allegations copies verbatim Armstrong's summary of the allegations in paragraph 4 of Armstrong's SOF, including all quotations. The Court does not adopt any of the allegations and lists them herein only for the fact that they are asserted in the Amended Complaint as summarized or quoted in Armstrong's SOF.

3

- Paras. 57 and 60: Mr. Carter "suppressed the transaction and his self-dealing," and "Armstrong is still unaware of where the Loan proceeds have gone."

- Para. 59: "Carter caused the proceeds of the MGA Holdings Loan to be diverted from MGA Holdings without disclosing such action to Armstrong, and his concealment and failure to disclose this transaction prevented any action to preserve the value of MGA Holdings for its investors."

- Paras. 16-17: Mr. Carter caused MGA to default on the Loan, and Bank of America foreclosed on the Property on April 3, 2018. Bryan Gentry obtained the Property at the sale for $1,773,205.60, and "[t]he value of the Property was completely lost to MGA Holdings due to Carter's self-dealing."

- Para. 18: "Gentry then sold the Property on or about April 10, 2018, to Dagen, LLC for below market value."

- Para. 19: "Both Gentry and Carter are affiliated with and have interests with Dagen, LLC. Upon information and belief, Carter and Gentry coordinated the sale from Gentry to Dagen prior to MGA Holding's [sic] sale of the Property to Gentry (at belowmarket-value)[sic], thereby constituting further self-dealings by Carter that he did not disclose to Armstrong."

- Para. 53: "The sale of the Property to Dagen, LLC was self-dealing and diverted further value from MGA Holdings to Carter himself."

- Para. 58: "Carter failed to disclose his interests with Dagen, LLC, current owner of the Property."

- Paras. 20-22: D&N Electric Company ("D&N") was MGA's tenant at the Property when MGA obtained the Loan and when Bank of America foreclosed, but MGA "refused to produce complete documentation of any transactions between D&N and MGA Holdings, and Carter did not distribute any rental payments to Armstrong." Mr. Carter also allowed other entities that he controlled, such as Carter Brothers Security Services, LLC, to use the Property without paying MGA.

- Paras. 23-24: "Carter's actions adversely affected the value of MGA Holdings and have caused irreparable damage to Armstrong," which Armstrong was "powerless to stop" as the minority member.

4

- Para. 68: "Carter engaged in willful misconduct and fraud. . . ."

- Para. 61: "Armstrong and MGA Holdings have been harmed by Carter's deceit and suppression, including the devaluation of MGA Holdings by millions of dollars."

- Para. 62: "Armstrong has been harmed by Carter's breach of fiduciary duties and is entitled to judgment in an amount to be determined at trial, but in no event less than 30% of the fair market value of the Property, plus interest and attorney's fees."

After Carter failed to comply with two orders compelling him to produce documents and otherwise satisfy his discovery obligations, the Superior Court entered an Order Finding Willful Violation of Discovery Orders by Defendants MGA Holdings, LLC and John Carter and Imposing Sanctions (the "Sanctions Order") on February 3, 2021.

The Sanctions Order included findings that Carter made false statements about his ability to access documents at issue and that he and MGA failed to produce certain documents. The Superior Court held Carter and MGA in contempt for willfully violating its discovery orders, struck their answer, and ordered the entry of default judgment as to liability in favor of Armstrong on all counts in the Amended Complaint.

The Sanctions Order, while making extensive findings relative to Carter's misconduct in the Superior Court Action, makes limited[3] findings of fact or

---

[3] The Sanctions Order made findings with respect to paragraphs 6, 9, 10, and 13 of the Amended Complaint, which assert that MGA is a single asset real estate entity owning the Property, that Armstrong owns 30% of MGA, that Carter was named as MGA's manager in 2014, and that Carter caused MGA to take a loan with Bank of America in the amount of $1,264,000 secured by the Property. The Sanctions Order also makes specific findings that MGA defaulted on the Bank of America loan; MGA sold the Property to Brian Gentry as part of a settlement with Bank of America; and Brian Gentry later sold the Property to Dagen, LLC. The Sanctions Order also makes findings that Carter has close personal relationships with people having an interest in Dagen, LLC.

5

conclusions relative to the allegations in the Amended Complaint or Plaintiff's claims for breach of fiduciary duty, fraud, deceit, and suppression, attorneys' fees, and punitive damages, other than to strike the answer and direct entry of judgment on those claims.

Carter and MGA appealed the Sanctions Order to the Georgia Court of Appeals but lost.

In November, 2022, the Superior Court set the case for a bench trial on May 25, 2023, to determine damages. In March, 2023, the Superior Court ordered post-judgment discovery regarding the punitive damages available to Armstrong, directing Carter and MGA to: (i) produce responses to Armstrong's interrogatories and requests for production of documents; (ii) certify under oath that they complied; and (iii) obtain counsel, noting that Carter and MGA had been without counsel for 16 months and that the trial would not be delayed for that reason.

Mr. Carter's counsel in this bankruptcy case entered an appearance in the Superior Court Action April 27, 2023, and immediately requested a continuance of the trial due to a scheduling conflict. The Court denied the request and, on May 23, 2023 (the "Petition Date")—less than two days before the trial—Mr. Carter filed this bankruptcy case.

### III. Legal Analysis

Fed. R. Civ. P. 56(a), applicable here through Fed. R. Bankr. P. 7056, provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

6

matter of law." Armstrong asserts there is no genuine issue of material fact as to Carter's liability for embezzlement or larceny and willful and malicious injury based on the preclusive effect of the Sanctions Order. In other words, Armstrong seeks summary judgment based on collateral estoppel or issue preclusion.

"Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) (citing *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)). Collateral estoppel applies in dischargeability proceedings. *Id.* (citing *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991)). "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *Id.* at 675-76 (citing *In re Touchstone*, 149 B.R. 721, 725 (Bankr. S.D. Fla.1993)). "While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *Id.* (citing *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir. 1987)). Because a Georgia state court rendered the Sanctions Order, this Court looks to Georgia preclusion law to determine whether collateral estoppel bars relitigation of any issues in this case. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263-64 (11th Cir. 2011) (applying Georgia preclusion law when analyzing the

effect of a Georgia state court judgment).

"Georgia law has not settled on a canonical list of elements to establish collateral estoppel." *Cmty. State Bank v. Strong*, 651 F.3d at 1264. Although the precise formulation of requirements can vary from case to case, a default judgment may be given preclusive effect under Georgia law if the following requirements are met:

> (1) identity of the parties is the same;
>
> (2) identity of the issues is the same;
>
> (3) actual and final litigation of the issue in question occurred;
>
> (4) the adjudication was essential to the earlier action; and
>
> (5) the parties had a full and fair opportunity to litigate the issues in question.[4]

*Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 922 (Bankr. N.D. Ga. 2010); *The Peoples Bank v. Abernathy (In re Abernathy)*, Ch. 7 Case No. 17-55926, Adv. No. 17-5170, 2019 WL 1489661, at *3 (Bankr. N.D. Ga. Apr. 1, 2019). A party seeking to establish collateral estoppel must demonstrate all five elements. *See Cmty. State Bank v. Strong*, 651 F.3d at 1264; *Zurich Am. Ins. Co. v. Hardin*, No. 1:20-cv-1594, 2021 WL 872326, at *3 (N.D. Ga. Mar. 9, 2021) (party who claims judgment has preclusive effect must prove elements of issue preclusion). The first element is not at issue, but Carter asserts Armstrong's request for summary judgment fails under the remaining

---

[4] Compare to the list "distilled" by the Eleventh Circuit in *Cmty. State Bank v. Strong*, 651 F.3d at 1264: "(1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction."

8

elements. The Court need not determine elements 3 and 5 because the Court concludes elements 2 and 4 have not been met.

### A. Identity of Issues

An identity of issues exists if the issues presented are the same, such that the issues would be decided "under identical governing law." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1267 (11th Cir. 2011). The court should consider the identity of the issues as between the claims in the Superior Court Action and the dischargeability claims on a claim-by-claim basis. Thus, the Court must determine whether the Superior Court Action claims have an identity of issues with the § 523(a)(4) claim, the § 523(a)(6) claim, or both. *See Lowery*, 440 B.R. at 924, 926 (analyzing whether issues were identical in state court action and bankruptcy proceeding separately under §§ 523(a)(2)(A), (a)(4), and (a)(6)).

As Carter points out in his brief, the claims pled in the Amended Complaint do not include claims for embezzlement, larceny, or willful and malicious injury. This alone is not dispositive, however, because, as Armstrong points out, issue preclusion does not require an identity of claims, only "issues." *See Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486, 696 S.E.2d 667, 669 (2010) (quoting *Karan, Inc. v. Auto-Owners Ins. Co.*, 629 S.E.2d 260, 262 (Ga. 2006)).

To determine whether an identity of issues exists in nondischargeability actions, bankruptcy courts repeatedly look to whether the elements of a claim for nondischargeability are sufficiently identical to the elements of the underlying claims asserted in the previous litigation. *Lowery*, 440 B.R. at 924 (comparing elements of

9

claim for fraud under § 523(a)(2) and fraud under Georgia law); *Jedlicka v. Neri (In re Neri)*, Case No. 17-53022-BEM, Adv. Pro. No. 17-5125-BEM, 2018 WL 333819, *7 (Bankr. N.D. Ga. Jan. 8, 2018) (comparing elements of fraud, conversion, breach of contract, punitive damages, and attorney's fees under Georgia law to elements of claims under § 523(a)(2), (4), and (6) where state court judgment contained no findings on which judgment was based); *In re Whelan*, 236 B.R. 495, 501 (Bankr. N.D. Ga. 1999) (finding elements of claims are not identical under § 523(a)(4), § 523(a)(6) and Georgia law); *Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 705 (N.D. Ga. 2000) (affirming as to the § 523(a)(4) and § 523(a)(6) claims). The case law often requires staunch precision. *See Mills v. Ellerbee (In re Ellerbee)*, 177 B.R. 731, 737 (Bankr. N.D. Ga. 1995) ("The definition of 'actual malice' [under Georgia punitive damages statute] is not the mirror image of the definition of "willful and malicious" in section 523(a)(6). . . . Consequently, collateral estoppel is no bar to further litigation concerning whether the debt is for a willful and malicious injury."). Courts, however, may find an identity of issues even if the elements are not *per se* identical if the trial court's findings and conclusions on specific facts and issues are the same facts to be considered in making a determination of nondischargeability. *See Tenet South Fulton, Inc. v. Demps (In re Demps)*, 506 B.R. 163, 171 (Bankr. N.D. Ga. 2014).

Armstrong makes no effort to compare the elements of his claims asserted in the Superior Court Action with the elements necessary to prove embezzlement, larceny, and willful and malicious injury. Nor does he cite to any specific findings or conclusions in the Sanctions Order itself that support a finding of embezzlement,

10

larceny, or willful and malicious injury. Instead, he cites to various allegations in the Amended Complaint that, when considered together, he argues, support a conclusion that the deemed-admitted allegations satisfy each element for embezzlement (or larceny) and willful and malicious injury. But only a handful of the allegations Armstrong cites are mentioned in the Sanctions Order, and the Sanctions Order does not discuss those allegations in the context of ruling on the merits of Armstrong's claims. Instead, the Sanctions Order focuses on allegations that were relevant to the discovery issues before the court, not the substantive merits of Armstrong's claims. Issue preclusion requires more than hand-selecting a few deemed-admitted allegations in a complaint regardless of what claims may have been at issue in the underlying litigation or whether the trier of fact considered those allegations in rendering its judgment.

The Court sees this as more than mere formality or nitpicking, as it could raise notions of due process to find a creditor has nondischargeable claims for embezzlement under § 523(a)(4) based on state court litigation asserting claims completely different from embezzlement, even if some of the allegations in the state court litigation could otherwise support a claim for embezzlement. Indeed, Armstrong states that "the Superior Court was asked to determine whether Mr. Carter defrauded Mr. Armstrong by embezzling funds from the company they owned together (*i.e.*, MGA), and willfully and maliciously injuring Mr. Armstrong." But that is not what the Amended Complaint asked the Superior Court to determine. The Amended Complaint asked the Superior Court to determine whether Carter had

11

committed a breach of fiduciary duty, whether he committed fraud, deceit, or suppression, and whether Armstrong was entitled to attorney's fees and punitive damages.

When the judgment to be given preclusive effect does not make sufficient findings to determine which specific issues it decided, the Court must compare the issues necessary to prove the state law claims on which judgment was entered with the issues necessary to prove the nondischargeable claims at issue.

1. <u>No identity of issues exists between the Sanctions Order and Armstrong's embezzlement or larceny claims</u>

The elements for embezzlement under § 523(a)(4) are (1) property owned by another is rightfully in the possession of the debtor; (2) the debtor appropriates the property for personal use; and (3) the appropriation occurred with fraudulent intent or by deceit. *Ideal Dev. Concepts, LLC v. Gross (In re Gross)*, 639 B.R. 255, 260 (Bankr. N.D. Ga. 2022). Larceny is similar, with the primary difference being that "the original taking of property be unlawful." *See In re King*, 624 B.R. 259, 302 n.6 (Bankr. N.D. Ga. 2020).

The claims in the Superior Court Action that Armstrong asserts are relevant, were breach of fiduciary duty; fraud, deceit, and suppression; attorneys' fees; and punitive damages.

A claim for breach of fiduciary duty under Georgia law requires the existence of a fiduciary duty, breach of the duty, and damage proximately caused by the breach. *Bedsole v. Action Outdoor Advertising JV, LLC,* 325 Ga. App. 194 (2013). Claims for embezzlement or larceny contain no similar elements. Breach of fiduciary duty does

12

not require a taking or possession of property, appropriation of property for personal use, or fraudulent intent or deceit. No identity of issues exists between the judgment finding liability for breach of fiduciary duty and embezzlement or larceny.

"The five elements for fraud and deceit in Georgia are: (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 770, 208 S.E.2d 794, 797 n.1 (1974); *Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 922 (Bankr. N.D. Ga. 2010).[5] Although claims for fraud, embezzlement, and larceny share in a requirement of scienter, i.e., intent to deceive or fraudulent conduct, fraud does not require any form of taking of property or appropriation for personal use. Further, the scienter requirements relate to different factual circumstances. The scienter necessary to establish fraud relates to false statements, whereas the scienter related to embezzlement and larceny relate to appropriation of property. Just because a defendant has scienter in one context does not mean he has scienter in another, and nothing in the Sanctions Order discusses or makes any findings related to Carter's scienter with respect to the underlying claims. Thus, no identity of issues exists between the judgment finding liability for fraud, deceit, or suppression, on the one hand, and embezzlement and larceny, on the other.

---

[5] Neither Armstrong nor Carter offers any case law or discussion of the elements of "suppression" or to what extent those claims differ from a claim for fraud. O.C.G.A § 23-2-53, however, provides that "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." The Court finds the requirements of this statute do not share an identity of issues with embezzlement or larceny.

13

Armstrong's claims for attorney's fees relies on O.C.G.A. § 13-6-11. That statute allows for recovery of attorney's fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." This statute does not share any of the requirements for embezzlement or larceny. Although a finding of bad faith could be based on the same facts that could support a finding of scienter for embezzlement or larceny, again, nothing in the Sanctions Order discusses or makes any findings related to Carter's scienter with respect to the underlying claims. The Court finds no identity of issues between the judgment finding liability on attorney's fees and embezzlement or larceny.[6]

Armstrong's claim for punitive damages relies on O.C.G.A. § 15-12-5.1. That section allows for punitive damages if "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Again, although punitive damages may require some form of scienter similar to embezzlement or larceny, it does not share any other requirements, and nothing in the Sanctions Order discusses or makes any findings related to Carter's scienter with respect to the underlying claims. The Court finds no identity of issues between the judgment finding liability for punitive damages and embezzlement or larceny.

---

[6] Further, some cases appear to find that claims for attorney's fees awarded pursuant to O.C.G.A. § 13-6-11 are nondischargeable only if they relate to a substantive claim that is also nondischargeable. *See Cox v. Corona (In re Corona)*, 657 B.R. 554, 569 (Bankr. N.D. Ga. 2024) ("If attorney's fees are awarded in connection with a claim that includes both dischargeable and nondischargeable components, then the court may apportion the fee award accordingly.").

14

2. <u>No identity of issues exists between the Sanctions Order and Armstrong's willful and malicious injury claim</u>

Section 523(a)(6) requires a showing of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "[P]roof of 'willfulness' requires 'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting *In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995)). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* (quoting *In re Walker*, 48 F.3d at 1165). Willfulness requires a court to consider the defendant's subjective intent. *Lowery*, 440 B.R. at 928; *Terhune v. Houser (In re Houser)*, 458 B.R. 771, 779 (Bankr. N.D. Ga. 2011). Section 523(a)(6) also requires a showing of malice. *Abernathy*, 2019 WL 1489661, at *3. "Malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Jennings*, 670 F.3d at 1334 (quoting *Walker*, 48 F.3d at 1163) (internal quotations omitted).

Neither a claim for breach of fiduciary duty nor a claim for fraud under Georgia law requires a showing of willfulness or malice as required by § 523(a)(6), and the Court finds no identity of issues on those matters.

Although courts have found that a finding of bad faith under O.C.G.A. § 13-6-11 can support issue preclusion on the question willfulness and malice under § 523(a)(6), bad faith under the Georgia statute is not *per se* identical to willfulness or malice under the Bankruptcy Code, and the findings of the trier of fact must be

15

consulted to determine whether a finding of bad faith can support a willful and malicious injury claim under § 523(a)(6). *See Tenet South Fulton, Inc. v. Demps (In re Demps)*, 506 B.R. 163, 171 (Bankr. N.D. Ga. 2014).[7] The Sanctions Order contains no findings relative to Carter's bad faith in connection with the underlying claims at issue in the Superior Court Action, and the Court finds no identity of issues between Armstrong's willful and malicious claims and the judgment finding liability for attorney's fees in the Superior Court Action.

Finally, punitive damages under O.C.G.A. § 51-12-5.1(b) are not always nondischargeable as a willful and malicious injury. *Summit Hosting, LLC v. Wilder (In re Wilder)*, No. 21-58597, AP No. 22-5066, 2022 WL 4002261 (Bankr. N.D. Ga. Sept. 9, 2022) (bases for punitive damages are disjunctive and ground of conscious indifference to consequences does not necessarily constitute willful and malicious injury under § 523(a)(6)); *In re Corona*, 657 B.R. at 570; *Jedlicka v. Neri (In re Neri)*, Case No. 17-53022-BEM, Adv. Pro. No. 17-5125-BEM, 2018 WL 333819, *7 (Bankr. N.D. Ga. Jan. 8, 2018); (*Allen v. Morrow (In re Morrow)*), 508 B.R. 514, 522 (Bankr. N.D. Ga. 2014); *In re Ellerbee*, 177 B.R. at 737 ("The definition of 'actual malice' is not the mirror image of the definition of 'willful and malicious' in § 523(a)(6)"); *see also In re St. Laurent*, 991 F.2d at 676 ("If the judgment fails to distinguish as to which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment

---

[7] *Demps* appears to conclude implicitly and without analysis that an award of attorney's fees can form an independent basis for a nondischargeable claim without regard to whether the award was in connection with another nondischargeable claim. Other cases appear to hold the opposite. *See*, note 6, *supra*. The Court makes no ruling on this issue as it is not necessary to the Court's conclusion.

16

has no preclusive effect."). Although punitive damages might be based on factual findings that could be preclusive to a willful and malicious injury claim, again, the Sanctions Order makes no findings relative to Carter's intention to injure Armstrong or maliciousness. Accordingly, the Court finds no identity of issues between the judgment on liability for punitive damages and Armstrong's willful and malicious injury claim.

### B. <u>Issues Essential to Adjudication</u>

Even if the Court were to conclude that the allegations highlighted by Armstrong satisfied the identity of issues prong, he has not established that any of those factual allegations were essential to the Sanctions Order's direction to enter judgment on liability on any particular claim. An issue is essential if it "necessarily had to be decided in order for the previous judgment to have been rendered." *Allen v. Morrow (In re Morrow)*, 508 B.R. 514, 522 (Bankr. N.D. Ga. 2014) (quoting *Waldroup v. Greene Co. Hosp. Auth.,* 265 Ga. 864, 866 (1995)). Essentiality requires the issue to "have been squarely addressed, or 'directly decided,' in the former suit." *Cmty. State Bank*, 651 F.3d at 1268 (quoting *Tootle v. Player*, 169 S.E.2d 340, 341 (Ga. 1969)). If a judgment "could be supported by two or more grounds, and it does not specify the grounds on which it rests," a court should not give the judgment preclusive effect. *Morrow*, 508 B.R. at 522.

Although Carter may be deemed to have admitted each fact in the Amended Complaint by having his answer struck, the court must consider the contents of the Sanctions Order and not just the facts from the state court complaint for purposes of

17

issue preclusion. *See Sims v. Morris (In re Morris)*, 185 B.R. 939, 942 (Bankr. N.D. Ga. 1994) (declining to apply collateral estoppel where judgment not specific enough for bankruptcy court to determine controlling facts for exact issues decided). As already discussed above, the Sanctions Order makes only a few findings of fact from the Amended Complaint, and the findings are made in the context of addressing the discovery issues in the Superior Court Action, not the underlying claims. For example, Armstrong highlights 14 of 69 individually numbered allegations in his brief as support for his claim for embezzlement. Five of the allegations are included in the general fact section of the Amended Complaint; two appear in the count for breach of fiduciary duty; four in the count for fraud; one in the attorney's fee count; and one in the punitive damages count. The Court simply cannot tell if these 14 allegations were necessary to the Court's conclusion to enter judgment on each claim in the Amended Complaint. *See White v. Elliot (In re Elliott)*, Ch. 7 Case No. 16-57911, Adv. No. 16-05173, 2017 WL 2062873, at *3 (Bankr. N.D. Ga. May 12, 2017) (declining to apply collateral estoppel on judgment on all theories set forth in complaint where judgment included no findings of fact and was ambiguous on whether damages attributable to fraud or breach of contract claims); *see also Ragy*, 2016 WL 2935610, at *3 (court declined to give state court judgment preclusive effect when default judgment did not specify whether it was based on plaintiff's fraud or breach of contract claim); *Hit-Em-Hard Corp. v. Lewis (In re Lewis)*, Ch. 7 Case No. 12-58938, Adv. No. 12-5577, 2016 WL 1426929 (Bankr. N.D. Ga. Apr. 11, 2016) (declining to apply collateral estoppel when plaintiff pled "multiple theories of recovery and the Superior Court's Default

18

Judgment and Final Judgment did not make any specific findings of fact or conclusions of law" so court could not find any one theory of recovery was essential to judgment); *Cmty. State Bank*, 651 F.3d at 1268, 1269 (finding an issue was necessarily decided when it was sole issue before state court and judgment was "unambiguous" in "squarely resolv[ing]" issue).

Armstrong argues that "[t]he Superior Court Judgment is clear that Defendant engaged in willful and improper conduct, including dishonesty about the whereabouts of the information Plaintiff sought to prove his case," but these findings related to his actions in the Superior Court Action itself and not the underlying claims, and the Court does not agree that the Sanctions Order makes any specific findings that support the nondischargeable claims at issue in this case. At the end of the day, the Court is sympathetic to Armstrong's position because he diligently litigated his claims against Carter, who clearly engaged in discovery abuse in the litigation and withheld many of the documents that Armstrong seeks to prove his claims. The Court does not condone such behavior, and it does not support the idea of a do-over in this case after being sanctioned by the Superior Court, but the Court does not believe that the Sanctions Order satisfies the requirements for issue preclusion on embezzlement, larceny, or willful and malicious injury. Those claims, or the issues necessary to prove them, simply were not put into issue in the Superior Court Action nor clearly decided by the Superior Court.

19

### IV. Conclusion

Because Plaintiff fails to establish that the Sanctions Order is entitled to preclusive effect in this adversary proceeding,

IT IS ORDERED that the Motion is DENIED.

The Clerk is directed to serve a copy of this Order on all counsel of record in this adversary proceeding.

**END OF DOCUMENT**